IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SHELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:15-CV-11040 |
| | § | |
| BURLINGTON NORTHERN SANTA FE | § | Judge John J. Tharp, Jr. |
| RAILWAY COMPANY, | § | Magistrate Judge Maria Valdez |
| | § | |
| Defendant. | § | |

## DEFENDANT'S ANSWER

Defendant BNSF Railway Company (named as Burlington Northern and Santa Fe Railway Company) ("BNSF") answers the Complaint (the "Complaint") filed by Ronald Shell ("Plaintiff" or "Shell").

## DEFENSES

1.     The Complaint fails to state a claim upon which relief may be granted.

2.     The Complaint violates Rule 8(a)(2) by not containing a "short and plain" statement of the claims.

3.     The claims by Shell under the Americans with Disabilities Act ("ADA") are barred in whole or in part to the extent the claims are not based on a timely and proper charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") or that exceed the scope of any such charge.

4.     The claims by Shell under 775 ILCS 5/1–101, *et seq*., the Illinois Human Rights Act ("IHRA"), are barred in whole or in part to the extent the claims are not based on a timely and proper charge of discrimination filed with the Illinois Human Rights Commission or that exceed the scope of any such charge.

**DEFENDANT'S ANSWER – Page 1**

5.      The claims under the ADA are barred to the extent Shell did not file this action within 90 days after receiving notice from the EEOC of his right to sue on claims raised in his charge of discrimination, or as to which no such notice was given.

6.      The claims under the ADA or the IHRA are barred in whole or in part to the extent that Shell did not timely, properly, and fully exhaust his administrative remedies or satisfy the administrative prerequisites to bringing suit under that statute.

7.      Shell has not adequately pleaded that he was a person with a "disability" under either the ADA or the IHRA.

8.      Shell was not a "qualified individual" under the ADA or qualified under the IHRA.

9.      BNSF's actions toward Shell were authorized by the ADA and/or the IHRA and therefore cannot give rise to liability under the ADA or the MHRA.

10.     BNSF's actions of which Shell complains were required or necessitated by another federal law or regulation and therefore were permissible under the ADA and the IHRA.

11.     Any claims under or requirements of the IHRA that conflict or interfere with rights granted to employers under the ADA are preempted unless expressly saved from preemption by the ADA.

12.     If necessary, BNSF will demonstrate that its actions satisfied the job-related-and-consistent-with-business-necessity standard, the direct-threat standard, and/or as to the IHRA the bona fide occupational qualification standard.

13.     Shell was not entitled to any reasonable accommodation, and he has not properly raised any issue of reasonable accommodation.  Alternatively, to the extent that Shell does

**DEFENDANT'S ANSWER – Page 2**

permissibly raise an issue concerning reasonable accommodation, BNSF will show that any proposed reasonable accommodation would pose an undue hardship.

14.     BNSF at all times acted in good faith, with justification and reasonable grounds for believing its conduct was not in violation of law.

15.     BNSF's actions were based on legitimate, non-discriminatory business reasons.

16.     To the extent that resolution of Shell's claims require an interpretation or application of a collective bargaining agreement, such claims are precluded by the Railway Labor Act.

17.     Shell's claims are barred or limited by laches resulting from the significant delay in administrative processing of his charge of discrimination.

18.     Shell's claims are barred or limited by the doctrines of estoppel, waiver, consent, and election of remedies.

19.     Shell's claimed damages must be limited, or are not recoverable at all, to the extent he failed to reasonably mitigate or avoid such damages.

20.     Any damages awarded to Shell must be reduced by any compensation, savings in expenses, and benefits he received that he would not have received had the action(s) about which he complains not been taken.

21.     If Shell proves that any protected characteristic or activity claimed in this lawsuit was a motivating factor for any adverse employment action taken against him by BNSF, then BNSF will show that the same action would have been taken notwithstanding such factor, thus precluding or limiting his recoverable damages.

22.     Plaintiff's claims fail in whole or in part to the extent such claims are duplicative and/or Plaintiff seeks duplicative remedies for the same conduct.

23.     To the extent BNSF discovers that Shell engaged in conduct that would warrant BNSF not hiring him or that would have led to BNSF not hiring him, Plaintiff's claims are barred or Plaintiff's potential recovery is barred or limited by such conduct.

24.     If the Court or jury determines that Shell has shown a violation of the ADA or IHRA, BNSF will show that such action was contrary to its policies and good-faith efforts to comply with the ADA or the IHRA, such that punitive damages are not recoverable.

25.     Any award of compensatory or punitive damages or any other relief must comply with, and is subject to the defenses and limitations of applicable federal and state law, including, 42 U.S.C. § 1981a.

26.     Any award of punitive damages must comply with the U.S. Constitution and, as to the IHRA, applicable state law.

27.     BNSF reserves the right to raise defenses as may be discovered during the course of these proceedings.

## SPECIFIC ADMISSIONS AND DENIALS

Subject to and without waiver of any of the foregoing defenses, BNSF answers the allegations in the Complaint as follows:

1.     This action is brought pursuant to the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) and the Illinois Human Rights Act (775 ILCS 5/1–101, *et seq.*) ("IHRA").

**ANSWER:    With respect to paragraph 1, BNSF acknowledges that Shell brings this action pursuant to the ADA and the IHRA but BNSF denies that it violated either statute.**

2.     Jurisdiction exists under 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights. The jurisdiction of this Court is invoked to secure protection of and

**DEFENDANT'S ANSWER – Page 4**

redress deprivation of rights guaranteed by federal law, which rights provide for damages and other relief for illegal discrimination in employment. The Court also has supplemental jurisdiction under 28 U.S.C. §1367 to adjudicate Plaintiff's state law claims, which arise under the IHRA.

**ANSWER:** **BNSF admits the jurisdictional allegations in paragraph 2 but denies that Plaintiff's claims have merit.**

3. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b) and (c) because the unlawful employment practices occurred in this district, Plaintiff is a citizen of the State of Illinois who currently resides within this judicial district, and the Defendant does business in this judicial district.

**ANSWER:** **BNSF admits that venue is proper and that it does business in this judicial district but denies that 28 U.S.C. § 1391 applies and lacks knowledge sufficient to form a belief as to the truth of the remaining allegations.**

4. Plaintiff, Ronald Shell ("Plaintiff"), a sixty-one (61) year-old Caucasian male, is an individual citizen and resident of this district.

**ANSWER:** **BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 4.**

5. Defendant, Burlington Northern Santa Fe Railway Company ("Defendant"), is a foreign for-profit corporation registered with the Illinois Secretary of State and doing business throughout the United States, including this district

**ANSWER:** **BNSF admits the allegations in paragraph 5 except for the following: BNSF's name is incorrect; the word "foreign" is incorrect; and BNSF operates in many states within the United States but not in all states.**

**DEFENDANT'S ANSWER – Page 5**

6.      On or around December 20, 2010, Plaintiff timely filed a Charge of Discrimination against Defendant with the Illinois Department of Human Rights. Plaintiff's Charge of Rights. Plaintiff's Charge of Discrimination was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

**ANSWER:     With respect to the allegations in paragraph 6, BNSF admits that Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights dated December 20, 2010 and that the charge also was filed with the EEOC but denies any remaining allegations.**

7.      On or around September 17, 2014, the EEOC made a reasonable cause determination against Defendant stating that it believed Defendant discriminated against Plaintiff on the basis of a perceived disability when making its decision not to hire him, a violation of the ADA.

**ANSWER:     With respect to the allegations in paragraph 7, BNSF admits that the EEOC issued a determination dated September 17, 2014 stating it found reasonable cause, but BNSF denies that Plaintiff's claims have merit or that the determination was correct or entitled to deference.**

8.      On or around September 10, 2015, the EEOC issued Plaintiff a notice of a right to sue, and this lawsuit is filed within ninety (90) days of Plaintiff's receipt of such notice on September 10, 2015.

**ANSWER:     BNSF admits the allegation in paragraph 8 that the EEOC issued Plaintiff a notice of right to sue but BNSF lacks knowledge sufficient to form a belief as to when Plaintiff received the notice and therefore at this time also lacks sufficient knowledge as to the timeliness of the lawsuit.**

**DEFENDANT'S ANSWER – Page 6**

9.     Plaintiff has otherwise complied with all federal and state law administrative prerequisites to filing this action.

**ANSWER:     BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 9.**

10.     Defendant had been continuously doing business in the State of Illinois and has continuously had at least fifteen (15) employees for each working day in each of twenty (20) or more calendar weeks within the year of or preceding the alleged violation.

**ANSWER:     BNSF admits the allegations in paragraph 10.**

11.     At all relevant times hereto, Defendant has been an employer under Section 775 ILCS 5/2-101 (B)(1) of the IHRA.

**ANSWER:     BNSF admits the allegations in paragraph 11.**

12.     At all relevant times hereto, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**ANSWER:     BNSF admits the allegations in paragraph 12.**

13.     On or around March 23, 1977, Santa Fe Railway ("SFR") hired Plaintiff as a driver in its "corwith yard" until in or around 1996 when SFR merged with Defendant. Thereafter, Plaintiff worked for an additional five (5) to six (6) years until Defendant subcontracted the work out to other companies, including Midwest Terminal Service and Rail Terminal Services ("RTS"). Plaintiff's successful career as a driver and/or driver/operator spanned over thirty-four (34) years. His most recent position was driver/operator.

**ANSWER:     BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 13 except that due to a merger in 1996 Atchison Santa Fe Railway Company became part of a company that now is BNSF.**

**DEFENDANT'S ANSWER – Page 7**

14.     Plaintiff's position throughout the years included operating several pieces of heavy machinery including: 1) cranes; 2) sideloaders; 3) forklifts; 3) hostler trucks; and 4) fantuzzy stack reachers.

**ANSWER:**     **BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 14.**

15.     Plaintiff was employed by RTS between 2000 – late December 2010.

**ANSWER:**     **BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 15.**

16.     On information and belief, between 2000 - 2011 Plaintiff had and maintained approximately the same body mass index of or above 40.00.

**ANSWER:**     **BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 16.**

17.     In or around July 2010, Defendant informed all of RTS's employees that it would be taking over all operations in the yard commencing in January 2011. Defendant further informed the employees that they would need to reapply with Defendant in order to retain their jobs.

**ANSWER:**     **With respect to the allegations in the first sentence of paragraph 17, BNSF admits that around June or July 2010 RTS employees were informed that BNSF would be taking over the operations from RTS at BNSF's Corwith facility.  BNSF denies all other allegations in paragraph 17.**

18.     On or around June 23, 2010, Plaintiff notified Defendant that he was interested in continuing his employment with Defendant.

**DEFENDANT'S ANSWER – Page 8**

**ANSWER:** **With respect to the allegations in paragraph 18, BNSF admits that Plaintiff submitted an application indicating his interest in obtaining a position with BNSF but denies the remaining allegations.**

19.     On or around June 23, 2010, Defendant informed Plaintiff that he would need to apply for a specific job to be considered an applicant for that job.

**ANSWER:** **With respect to the allegations in paragraph 19, BNSF admits that RTS employees were informed that they would need to apply for a position with BNSF but denies any remaining allegations.**

20.     On or around July 9, 2010, Defendant notified Plaintiff that he was required to undergo a pre-employment aptitude test and drug test, which would be scheduled in mid-July 2010.

**ANSWER:** **With respect to the allegations in paragraph 20, BNSF admits it sent a memo dated July 9, 2010 to All RTS Employees Applying for Employment with BNSF Railway notifying them that the position they applied for, Intermodal Equipment Operator, requires a pre-employment aptitude test and a hair test for illegal drugs. BNSF denies any remaining allegations in the paragraph.**

21.     On or around July 12, 2010, Plaintiff completed an online application for employment with Defendant as an Intermodal Equipment Operator in Chicago, Illinois. On information and belief, the job as Intermodal Equipment Operator was the same job and/or involved the same duties that Plaintiff had been doing for the previous thirty-four (34) years, including operating the following heavy machinery: 1) cranes; 2) sideloaders; 3) forklifts; 3) hostler trucks; and 4) fantuzzy stack reachers.

**ANSWER:** **BNSF admits the allegations in the first sentence of paragraph 21. BNSF denies all remaining allegations in the paragraph, including that the BNSF position was the same as Plaintiff's prior work.**

22.     In or around mid-July 2010, Plaintiff took and passed a pre-employment aptitude test and a drug test.

**ANSWER:** **BNSF admits the allegations in paragraph 22.**

23.     In or around late-July/early-August 2010, Plaintiff had a three (3) on one (1) interview with Defendant's personnel. During that interview, it was evident that Plaintiff was qualified for his job, could operate all machinery in the yard efficiently, and even taught other coworkers on how to operate said machinery. The interviewers commented that Plaintiff "could teach them a thing or two about the job".

**ANSWER:** **BNSF denies the allegations in paragraph 23.**

24.     On or around August 2, 2010, Defendant informed Plaintiff that he had "successfully completed the testing and interview process" for the position, Intermodal Equipment Operator. Defendant further informed Plaintiff that it thought he would "make an excellent addition to Defendant's team". On that same day, Defendant offered Plaintiff a conditional offer of employment with an anticipated a start date of January 1, 2011. The offer was conditioned upon successful completion of a physical examination and hair analysis drug screen; background investigation, proof of employment eligibility, and Defendant's receipt and review of medical history questionnaire.

**ANSWER:** **BNSF admits the allegations in paragraph 24.**

25.    On or around August 2, 2010, Defendant informed Plaintiff that it had notified Comprehensive Health Services, Inc. ("CHS") to initiate his Post Offer of Employment medical examination.

**ANSWER:    BNSF admits the allegations in paragraph 25.**

26.    On or around August 10, 2010, CHS administered a physical capabilities test to Plaintiff, which included a body mass index test.

**ANSWER:    BNSF admits the allegations in paragraph 26 that Plaintiff was given a physical capabilities test on or around August 10, 2010 but denies the remaining allegations in the paragraph.**

27.    In or around mid-late August 2010, Plaintiff received the results of his physical capabilities test. The results stated that Plaintiff "[did] not meet minimum physical demands of the essential functions of the Intermodal Equipment Operator." Additionally, according to Defendant, Plaintiff's confirmed height of 6'0 and weight of 332 pounds placed him at a body mass index of 45.1504.

**ANSWER:    BNSF admits the allegations in paragraph 27.**

28.    In or around September 2010, Plaintiff met with Chris Kowalkowski ("Kowalkowski"), Defendant's Director of Medical Support Services, to review the results of his physical capabilities test. Kowalkowski informed Plaintiff that he was a health risk, that he needed to lose weight, and that his body mass index was not good for his heart. Kowalkowski further informed Plaintiff that because of his body mass index, he probably suffered from sleep apnea and may need to undergo sleep study at Plaintiff's own expense, with no guarantee that he would be offered a job. Plaintiff never suffered from sleep apnea, nor informed Kowalkowski that he suffered from sleep apnea.

**DEFENDANT'S ANSWER – Page 11**

**ANSWER:** BNSF admits the allegations in the first sentence of paragraph 28 that there was a meeting in or around September 2010 between Plaintiff and Kowalkowski. BNSF lacks knowledge sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 28. BNSF denies all other allegations in paragraph 28.

29. On or around September 22, 2010, Defendant notified Plaintiff that, while he had completed the necessary steps in the medical evaluation, he had failed the physical capabilities test.

**ANSWER:** With respect to the allegations in paragraph 29, BNSF admits that on or around September 22, 2010 it notified Plaintiff that he failed the physical capabilities test but denies the remaining allegations.

30. On or around October 1, 2010, Plaintiff completed the medical history questionnaire.

**ANSWER:** BNSF admits that Plaintiff submitted a medical questionnaire but denies the remaining allegations in paragraph 30.

31. On or around October 12, 2010, Kowalkowski informed Plaintiff that re-testing for physical capabilities would be available on October 18 and 19, 2010. Kowalkowski further informed Plaintiff that if he "failed the physical capabilities re-test, [Kowalkowski would call him] to discuss a ninety (90) day program and roadmap for re-testing in late December or early January if [Plaintiff wish]ed to do so."

**ANSWER:** BNSF admits the allegations in the first sentence of paragraph 31. BNSF denies the allegations in the second sentence of paragraph 31.

32. On or around October 19, 2010, Plaintiff completed another physical capabilities testing.

**ANSWER:**     **BNSF admits the allegations in paragraph 32.**

33.     In or around mid to late-October 2010, Defendant informed Plaintiff that he had passed his physical capabilities test and that he "me[t] minimum physical demands of the essential functions of Intermodal Equipment Operator."

**ANSWER:**     **BNSF admits the allegations in paragraph 33 that BNSF informed Plaintiff that he had passed his physical capabilities test and admits that the documentation regarding that test states that Plaintiff met the minimum physical demands of the essential functions of Intermodal Equipment Operator, but BNSF denies the other allegations in the paragraph.**

34.     In or around mid to late-October 2010, a representative of CHS called Plaintiff to inform him that Defendant was requiring him to undergo test(s) for sleep apnea and that Plaintiff needed to submit his medical records to Defendant for the previous seven (7) years.

**ANSWER:**     **BNSF denies the allegations in paragraph 34.**

35.     On or around early-November 2010, Defendant notified Plaintiff he was to attend another exam on November 5, 2010, which he did. Defendant requested copies of notes from Plaintiff's last two (2) visits to his cardiologist and any further testing

**ANSWER:**     **BNSF admits the allegations in paragraph 35.**

36.     On or around November 9, 2010, Defendant rescinded its conditional employment offer to Plaintiff. Defendant informed Plaintiff that he was not qualified for his "safety sensitive" position because of the "significant health and safety risks associated with Class 3 Obesity (Body Mass Index above 40)". According to Defendant, Plaintiff had a body mass index of 44.7424. At that time, Defendant also informed Plaintiff that his case could be reconsidered if he lost at least 10% of his body weight (33 pounds) and then maintained that level for at least six (6) months.

**DEFENDANT'S ANSWER – Page 13**

Defendant further informed Plaintiff that at the end of the six (6) months, depending on his body mass index, Plaintiff may need to provide the following information to document and to permit further evaluation of his health status:

>    a.    Sleep study (polysommogram or overnight sleep study);
>
>    b.    Medical report from his physician documenting measured blood pressure, fasting blood sugar level, fasting lipid profile (total, HDL, LDL cholesterol and triglyceride), documentation of hip and waist measurement: waist (at or below naval) and hip (where buttocks are largest), smoking history and other cardiac risk factors; and
>
>    c.    Clinical exercise tolerance test using a standard protocol that documents his exercise capacity in METS, heart rate recovery and electrocardiographic changes.

Defendant decided not to hire Plaintiff on the basis of his perceived disability, Class 3 Obesity, without showing that the criteria it used to deny him employment was related to the subject position and consistent with job necessity.

**ANSWER:    BNSF admits the allegations in the first, third, fourth, and fifth sentences of paragraph 36.  With respect to the second sentence of paragraph 36, BNSF admits that it informed Plaintiff that he was not currently medically qualified for the "safety sensitive" position because of the "significant health and safety risks associated with Class 3 Obesity (Body Mass Index above 40)" but denies the remaining allegations. BNSF denies the allegations in the sixth sentence of paragraph 36.**

37.    On or around November 11, 2010, Defendant informed Plaintiff that, while he had passed the physical capabilities test, said test was only one medical component of his overall medical review for the position of Intermodal Equipment Operator.

**ANSWER:    BNSF admits the allegations in paragraph 37.**

**DEFENDANT'S ANSWER – Page 14**

38.    On or around January 1, 2011, Defendant took over operations from RTS. At that time, Plaintiff was not able to continue his employment with Defendant pursuant to the November 9, 2010 correspondence.

**ANSWER:    With respect to the allegations in paragraph 38, BNSF admits it took over the operations from RTS on January 4, 2011 but denies the remaining allegations in the paragraph.**

39.    Defendant's decision to rescind its offer of employment did not take into account Plaintiff's thirty-four (34) year career as a successful driver/operator of the yard.

**ANSWER:    BNSF denies the allegations in paragraph 39.**

40.    Defendant's decision to rescind its offer of employment did not take into account that Plaintiff's body mass index was approximately the same during the last ten (10) years of his employment as a driver/operator.

**ANSWER:    BNSF denies the allegations in paragraph 40.**

41.    Plaintiff met other physical qualifications for the position of Intermodal Equipment Operator.

**ANSWER:    BNSF denies the allegations in paragraph 41.**

42.    Defendant's decision to rescind its offer of employment disqualified Plaintiff from a broad range/class of jobs that Defendant deemed to be "safety sensitive".

**ANSWER:    BNSF denies the allegations in paragraph 42.**

43.    Plaintiff reasserts and incorporates by reference paragraphs one (1) though forty-two (42) as set forth above as if fully restated herein.

**ANSWER:    In response to paragraph 43, BNSF incorporates its previous responses to the allegations in paragraphs 1-42 of the Complaint.**

**DEFENDANT'S ANSWER – Page 15**

44.     At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

**ANSWER:     BNSF denies the allegations in paragraph 44.**

45.     Plaintiff was qualified to perform the essential functions of his job, with or without accommodation.

**ANSWER:     BNSF denies the allegations in paragraph 45.**

46.     Section 42 U.S.C. § 12112(a) of the ADA prohibits an employer from:

> discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

**ANSWER:     BNSF admits that paragraph 46 accurately quotes a portion of the referenced statute but denies any remaining allegations in the paragraph.**

47.     Defendant's decision to rescind the Plaintiff's employment offer (failure to hire) based upon his body mass index was in violation of the ADA in that it regarded him as disabled.

**ANSWER:     BNSF denies the allegations in paragraph 47.**

48.     The effect of this practice deprived Plaintiff of equal employment opportunities and adversely affected his status of an employee vis-à-vis job application procedures and hiring based on his perceived disability.

**ANSWER:     BNSF denies the allegations in paragraph 48.**

49.     Defendant perceived Plaintiff to be disabled in that his "Level 3 Obesity" placed him as a health risk for "safety sensitive" positions.

**ANSWER:     BNSF denies the allegations in paragraph 49.**

**DEFENDANT'S ANSWER – Page 16**

50.     Defendant believed such condition(s) would substantially limit one or more of Plaintiff's major life activities, including, but not limited to: performing manual tasks and working.

**ANSWER:     BNSF denies the allegations in paragraph 50.**

51.     As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damage including loss of back pay including wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:     BNSF denies the allegations in paragraph 51.**

52.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:     BNSF denies the allegations in paragraph 52.**

53.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.+

**ANSWER:     BNSF acknowledges Plaintiff's requests for relief in paragraph 53 and the subsequent unnumbered paragraph but denies that Plaintiff is entitled to any such relief.**

54.     Plaintiff reasserts and incorporates by reference paragraphs one (1) though forty-two (42) as set forth above as if fully restated herein.

**ANSWER:     In response to paragraph 54, BNSF incorporates its previous responses to the allegations in paragraphs 1-42 of the Complaint.**

**DEFENDANT'S ANSWER – Page 17**

55.     At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

**ANSWER:     BNSF denies the allegations in paragraph 55.**

56.     Section 42 U.S.C. § 12112(b) provides that:

> the term 'discriminate against a qualified individual on the basis of disability' includes –
>
> (6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]

**ANSWER:     BNSF admits that paragraph 56 accurately quotes a portion of the referenced statute but denies any remaining allegations in the paragraph.**

57.     Defendant discriminated against Plaintiff on the basis of disability by imposing selection criteria, including medical screening that screens out, tends to screen out, or has a disparate impact on individuals who disclose disabilities that are not shown to be job-related for the position in question and are not consistent with business necessity.

**ANSWER:     BNSF denies the allegations in paragraph 57.**

58.     As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damage including loss of back pay including wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:     BNSF denies the allegations in paragraph 58.**

**DEFENDANT'S ANSWER – Page 18**

59.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:     BNSF denies the allegations in paragraph 59.**

60.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:     BNSF acknowledges Plaintiff's requests for relief in paragraph 60 and the subsequent unnumbered paragraph but denies that Plaintiff is entitled to any such relief.**

61.     Plaintiff reasserts and incorporates by reference paragraphs one (1) though forty-two (42) as set forth above as if fully restated herein.

**ANSWER:     In response to paragraph 61, BNSF incorporates its previous responses to the allegations in paragraphs 1-42 of the Complaint.**

62.     At all relevant times hereto, Plaintiff was disabled within the meaning of the ADA.

**ANSWER:     BNSF denies the allegations in paragraph 62.**

63.     Section 42 U.S.C. § 12112(d)(4) provides that:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

**ANSWER:     BNSF admits that paragraph 63 accurately quotes a portion of the referenced statute but denies any remaining allegations in the paragraph.**

64.     Though it was neither job-related nor consistent with business necessity, Defendant required an initial medical examination, a subsequent medical examination, and

**DEFENDANT'S ANSWER – Page 19**

inquired as to whether Plaintiff is an individual with a disability and as to the nature and severity of the disability.

**ANSWER:** **BNSF denies the allegations in paragraph 64.**

65.  As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damage including loss of back pay including wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:** **BNSF denies the allegations in paragraph 65.**

66.  The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:** **BNSF denies the allegations in paragraph 66.**

67.  Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:** **BNSF acknowledges Plaintiff's requests for relief in paragraph 67 and the subsequent unnumbered paragraph but denies that Plaintiff is entitled to any such relief.**

68.  Plaintiff reasserts and incorporates by reference paragraphs one (1) though forty-two (42) as set forth above as if fully restated herein.

**ANSWER:** **In response to paragraph 68, BNSF incorporates its previous responses to the allegations in paragraphs 1-42 of the Complaint.**

**DEFENDANT'S ANSWER – Page 20**

69.     At all relevant times hereto, Plaintiff was disabled within the meaning of the IHRA.775 ILCS 5/1-103 (I).

**ANSWER:**     **BNSF denies the allegations in paragraph 69.**

70.     Plaintiff was qualified to perform the essential functions of his job, with or without accommodation.

**ANSWER:**     **BNSF denies the allegations in paragraph 70.**

71.     Section 775 ILCS 5/2-102 (A) provides that it is a civil rights violation for an employer to:

> to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination….

**ANSWER:**     **BNSF admits that paragraph 71 accurately quotes a portion of the referenced statute but denies any remaining allegations in the paragraph.**

72.     Defendant's decision to rescind the Plaintiff's employment offer (failure to hire) based upon his body mass index was in violation of the IHRA in that it regarded him as disabled.

**ANSWER:**     **BNSF denies the allegations in paragraph 72.**

73.     The effect of this practice deprived Plaintiff of equal employment opportunities and adversely affected his status of an employee vis-à-vis job application procedures and hiring based on his perceived disability.

**ANSWER:**     **BNSF denies the allegations in paragraph 73.**

74.     Defendant perceived Plaintiff to be disabled in that his "Level 3 Obesity" placed him as a health risk for "safety sensitive" positions.

**ANSWER:**     **BNSF denies the allegations in paragraph 74.**

75.     Defendant believed such condition(s) would substantially limit one or more of Plaintiff's major life activities, including, but not limited to: performing manual tasks and working.

**ANSWER:     BNSF denies the allegations in paragraph 75.**

76.     As a direct and proximate result of Defendant's discrimination against Plaintiff, he has suffered and will continue to suffer damage including loss of back pay including wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be determined at trial.

**ANSWER:     BNSF denies the allegations in paragraph 76.**

77.     The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

**ANSWER:     BNSF denies the allegations in paragraph 77.**

78.     Plaintiff seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

**ANSWER:     BNSF acknowledges Plaintiff's requests for relief in paragraph 78 and the subsequent paragraph but denies that Plaintiff is entitled to any such relief.**

———————————

BNSF acknowledges Plaintiff's demand for a jury trial in the "Demand for Jury Trial" paragraph of the Complaint but denies that Plaintiff is entitled to any of the relief sought.

BNSF denies each and every allegation in the Complaint not specifically admitted or otherwise addressed.

**DEFENDANT'S ANSWER – Page 22**

**REQUEST FOR RELIEF**

BNSF asks that the Court enter judgment that Plaintiff take nothing from it, that it recover from Plaintiff its costs of court, including attorney's fees, and that it have other relief, at law or in equity, to which it may be entitled.

Dated: March 7, 2016.

Respectfully submitted:

By: /s/Bryan P. Neal
Bryan P. Neal
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Fax: (214) 969-1751
Email: Bryan.Neal@tklaw.com

Heather R. Adams
Daley Mohan Groble, P.C.
55 West Monroe Street, Suite 1600
Chicago, Illinois 60603-5001
Telephone: 312-422-9999
Fax: 312-422-5370
E-mail: hadams@daleymohan.onmicrosoft.com

ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed and served electronically through ECF on March 7, 2016, on all counsel of record, including Plaintiff's counsel:

Brittany N. Bermudez
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, Illinois 60527
Fax: 312-346-3177
brittany@eslaw500.com

/s/Bryan P. Neal
Bryan P. Neal

031432 000063 16627587.1

**DEFENDANT'S ANSWER – Page 24**