UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SHELL, | § | |
| | § | Case No. 0:15-cv-11040 |
| Plaintiff, | § | |
| | § | Judge Sharon Johnson Coleman |
| v. | § | |
| | § | Magistrate Maria Valdez |
| BURLINGTON NORTHERN SANTA FE | § | |
| RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This case involves claims of disability discrimination under the Americans with Disabilities Act ("ADA"), as amended in 2008 by the ADA Amendments Act. ("ADAAA"), based on an employment applicant's obesity. Showing that a condition is or was perceived by an employer to be an "impairment" is a necessary part of proving a "disability," a required element of an ADA claim. Federal courts—including most recently the Eighth Circuit when considering the very BNSF practice at issue in this case—have overwhelmingly held that obesity is not an impairment unless it is a symptom of a physiological disorder and affects one or more body systems. Otherwise, obesity is simply a physical characteristic, not an impairment. That remains true even after the expansion of the ADA occasioned by the enactment of the ADAAA.

Summary judgment is warranted because each of Plaintiff Ronald Shell's remaining claims requires proof of a "disability" under the ADA and Shell cannot prove that element. The only reason BNSF declined to hire Shell was his obesity, because of risks associated with that obesity in the railroad environment. But Shell did not have, and BNSF did not act on any understanding that he had, an impairment under the ADA—his obesity was not a symptom of

1

any present physiological disorder, nor did BNSF believe it to be. Accordingly, Shell cannot demonstrate an actual or perceived impairment and thus cannot show a "disability."

Shell's claims also fail because the undisputed evidence demonstrates that BNSF declined to hire him for a reason that is job-related and consistent with business necessity, a statutory defense to his ADA claims. Class III obesity is associated with certain health conditions that may arise without warning and, given the specialized and unforgiving railroad work environment, presents a significant safety risk to the employee and others. Accordingly, Shell's disability-discrimination claims fail even if he could make out the disability element of the claims.

## ARGUMENT[1]

I. **SHELL CANNOT ESTABLISH THAT HE WAS "DISABLED" FOR PURPOSES OF THE ADA.**

Shell originally asserted four claims. The Court dismissed Count III on BNSF's Motion for Judgment on the Pleadings, *see* Dkt. No. 246, and Shell withdrew Count IV, a claim under Illinois law, and it has been dismissed, *see* Dkt. No. 60. Only Counts I and II remain.

Both of those claims require proof that Shell had a "disability" under the ADA. Count I presents a claim under 42 U.S.C. § 12112(a), which prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures [and] hiring...." 42 U.S.C. § 12112(a). Count II presents a claim under 42 U.S.C. § 12112(b)(6), which prohibits the use of a qualification standard in hiring that screens out or tends to screen out individuals with disabilities. Thus, for both claims, Shell must "provide sufficient evidence from which a reasonable jury could conclude that he was an individual with a disability within the meaning of

---

[1] As the Court is aware, summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

the statute." *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 706 (7th Cir. 2015); *see also Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). Shell does not assert any actual disability (subsection (A)) or record of disability (subsection (B)). He claims only that he was "regarded as" disabled under subsection (C). *See* BNSF's Local Rule 56.1 Statement of Facts ("SOF") ¶ 31. The ADA provides that an individual meets the requirement of "being regarded as having such an impairment…if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an *actual* or *perceived* physical or mental *impairment*, whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added). Thus, to establish his disability-discrimination claims, Shell must prove an actual or perceived physical or mental impairment, a specialized term under the ADA. He cannot make that showing.

### A. Obesity is not an impairment for purposes of the ADA unless it is a symptom of an underlying physiological disorder.

"Physical or mental impairment" are defined in EEOC's regulations as including "any physiological disorder or condition" that "affects one or more body systems." 29 C.F.R. § 1630.2(h)(1). EEOC's interpretative guidance appended to the regulations further explains that the term "impairment" does not include physical characteristics that are not the result of an underlying physiological disorder:

> It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural, and economic characteristics that are not impairments. The definition of the term "impairment" does not include

3

> physical characteristics such as eye color, hair color, left-handedness, or *height, weight*, or muscle tone that are within "normal" range *and are not the result of a physiological disorder*. The definition, likewise, does not include characteristic predisposition to illness or disease. *Other conditions*, such as pregnancy, *that are not the result of a physiological disorder* are also not impairments... The definition of an impairment also does not include common personality traits such as poor judgment or a quick temper *where these are not symptoms of a mental or psychological disorder*.

29 C.F.R. § 1630.2(h) App. (emphasis added). The plain meaning of the regulation and interpretive guidance is that weight is a characteristic, not an impairment, unless it is the symptom of a physiological disorder and affects a major body system. Obesity is simply a reference to weight at certain levels. Accordingly, for obesity to be an impairment under the ADA, it must be the symptom of a physiological disorder and affect a major body system.

The overwhelming majority of federal courts have adopted exactly that interpretation of the ADA in obesity-based disability-discrimination cases. Most recently, the Eighth Circuit in *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 256 (2016), considered the very BNSF practice at issue in this case. In *Morriss*, the plaintiff alleged that BNSF discriminated against him on the basis of a perceived disability when it revoked his offer of employment for a safety-sensitive machinist position based on the safety risks associated with a BMI over 40. *Id.* at 1106. The Eighth Circuit affirmed summary judgment in favor of BNSF on the plaintiff's claim of "regarded as" disability on the ground that he had failed to demonstrate that obesity constituted an actual or perceived "impairment," concluding that "[A]n individual's weight is generally a physical characteristic that qualifies as a physical impairment only if it falls outside the normal range *and* occurs as a result of a physiological disorder." *Id.* at 1108 (emphasis in original). Applying the EEOC's interpretive guidance, the court held that "the relevant statutory and regulatory language makes it clear that for obesity to qualify as a physical

4

impairment—and thus a disability—under the ADA, *it must result from an underlying physiological disorder or condition.*" *Id.* (emphasis added). Nor does the level of obesity matter, the court emphasized: "to constitute an ADA impairment, a person's obesity, *even morbid obesity*, must be the result of a physiological condition." *Id.* at 1109 (emphasis added). Summary judgment thus was proper because the plaintiff failed to show that his obesity was the result of a presently existing physical impairment or that BNSF perceived it to be. *Id.* at 1113.

The *Morriss* court cited with approval authority from other circuits that have reached the same result. In *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006), for example, the Sixth Circuit considered a claim by EEOC on behalf of a morbidly obese former employee. *Id.* at 439. The Sixth Circuit affirmed summary judgment in favor of the employer, rejecting EEOC's argument that the former employee's morbid obesity constituted an "impairment" under the ADA. *Id.* at 442-43. Applying the EEOC's regulation defining "physical or mental impairment" the court held that "to qualify as an ADA impairment a physical impairment must be physiologically caused." *Id.* The court declined to extend ADA protection to "any physical abnormality—for example, someone extremely tall or grossly short" unless the abnormality is a physiologically-caused condition. Doing so, the court held, would undermine the central purpose of the statute, to protect the disabled, and would become a "catch-all cause of action for discrimination based on appearance, size and any number of things." *Id.* Because morbid obesity was not an impairment under the ADA, the employer's alleged actions based on, and its views about, the employee's morbid obesity did not constitute perceiving the employee as having an impairment. *Id.*; *see also Andrews v. Ohio*, 104 F.3d 803, 808-10 (6th Cir. 1997) (state troopers claiming the state perceived them as disabled because each trooper exceeded mandated weight

limits did not establish an "impairment" as their weight was not the result of a physiological disorder).

The Second Circuit has likewise held that weight is not an impairment under the ADA unless it is a symptom of a physiological disorder. In *Francis v. City of Meriden*, 129 F.3d 281, 287 (2nd Cir. 1997), the plaintiff was disciplined for exceeding a fire department weight guideline and alleged that the City perceived him as disabled solely based on his weight despite his ability to perform his job duties. *Id.* at 282. Disagreeing, the court held that weight and other physical characteristics that are not the result of a physiological disorder are not considered "impairments." *Id.* at 286. Because the plaintiff alleged only that the City regarded him as disabled because of his weight, the court held that he failed to demonstrate that he had a physical impairment under the ADA or that the employer believed that his weight condition constituted the kind of physical impairment protected by the statute. *Id.* at 287.

Numerous federal district courts also have emphasized the requirement of a physiological disorder before obesity can support a disability claim. In *Zarek v. Argonne Nat'l Laboratory,* 1998 WL 547288 (N.D. Ill. Aug 27, 1998), for example, the court granted summary judgment on a disability-discrimination claim for failure to show an "impairment" where there was no evidence that the plaintiff's obesity was believed to be due to a physiological disorder. *See id.* at *4-5; *see also Valtierra v. Medtronic Inc.,* 232 F. Supp. 3d 1117, 1125 (D. Ariz. 2017) ("a person's weight is a physical characteristic that qualifies as a physical impairment only if it (1) falls outside the normal range and (2) occurs as the result of a physiological disorder") (appeal filed); *cf. Love v. First Transit, Inc.*, 2017 WL 1022191, at * 5 (N.D. Ill. Mar. 16, 2017) (citing EEOC interpretive

6

guidance and noting that conditions such as pregnancy that are not the result of a physiological disorder are not impairments).[2]

Although many of the authorities just cited were decided under the pre-amendment ADA, the Eighth Circuit in *Morriss* squarely rejected the notion that the enactment of the ADAAA changed the law on whether obesity can constitute an impairment under the ADA. The court explained that although Congress's stated goal in enacting the ADAAA was to ensure "broad coverage" of individuals with disabilities and to abrogate Supreme Court rulings that had narrowly interpreted the scope of protection provided by the ADA, the ADAAA was aimed at the "substantially limits" aspect of disability. Congress did not express any disagreement with judicial interpretations of the term "impairment," nor did anything in the ADAAA or the EEOC's new regulations under the ADAAA modify the definition of "impairment." *Morriss*, 817 F.3d at 1110-11. Indeed, EEOC when updating its regulations to comply with the changes made by the ADAAA expressly stated that Congress intended no substantive change to the definition

---

[2] *Accord Lescoe v. Pa. Dept. of Corr.*, 2011 WL 1258334, at *14 (M.D. Pa. Mar. 5, 2011) ("It repeatedly has been held that excess weight or obesity, except in special instances where they relate to a physiological disorder, are not 'physical impairments' within the meaning of the statutes."), *adopted*, 2011 WL 1343144 (M.D. Pa. Mar. 30, 2011), *aff'd*, 2012 WL 505896, at *2 (3rd Cir. Feb. 16, 2012); *Hill v. Verizon Md., Inc.*, 2009 WL 2060088, at *6-*8 (D. Md. July 13, 2009) (ADA claim failed where there was no evidence the plaintiff suffered from an underlying physiological condition that caused his obesity); *Middleton v. CSX Transp., Inc.*, 2008 WL 846121, at *2 & n.6 (N.D. Fla. Mar. 28, 2008) ("[o]besity, even morbid obesity, however, does not constitute a physical impairment unless it is the result of a physiological disorder or condition"); *Caruso v. Camilleri*, 2008 WL 170321, at *15-16 (W.D.N.Y. Jan. 15, 2008) (granting summary judgment to employer where plaintiff had presented no evidence that his obesity resulted from a physiological condition); *Dale v. Wynn*, 497 F. Supp.2d 1337, 1342-43 (M.D. Ala. 2007) ("in order for obesity to be covered under the Rehabilitation Act, it must be based on a physiological disorder"); *Merker v. Miami-Dade County Fla.*, 485 F. Supp. 2d 1349, 1353 (S.D. Fla. 2007); *Marsh v. Sunoco, Inc.*, 2006 WL 3589053 at *4 (E.D. Pa. Dec. 6, 2006); *Coleman v. Ga. Power Co.*, 81 F. Supp. 2d 1365, 1369 (N.D. Ga. 2000).

of impairment in the ADAAA. *See* 29 C.F.R. 1630.2(h) App. Accordingly, the Eighth Circuit held that pre-ADAAA law remains valid on the question whether obesity can be an impairment for purposes of an ADA claim following the ADAAA. 817 F.3d at 1111 (pre-ADAAA caselaw remains "relevant and persuasive").

Other courts have likewise found that pre-amendment caselaw concerning impairment generally and obesity as an impairment specifically remains good law. *See Taylor v. Burlington N. R.R. Holdings*, 2016 WL 632077, at *6 (W.D. Wa. Feb. 17, 2016) (noting that "whether obesity is a disability turns on whether obesity is an 'impairment'" and that "[t]he 2008 amendments had no effect on the definition of impairment" such that there was "no justification to ignore previous cases interpreting the definition") (internal citations omitted) (appeal filed); *Powell v. Gentiva Health Servs., Inc.*, 2014 WL 554155, at *7-*8 (S.D. Ala. Feb. 12, 2014) (holding that even under the ADAAA obesity is not a disability unless it constitutes an actual "impairment" or the employer regarded it as an "impairment; reciting that there was no evidence the employer 'viewed [plaintiff's] weight as a physiological disorder that affected any of her body systems'"); *Sibilla v. Follett Corp.*, 2012 WL 1077655, at *9 (E.D.N.Y. Mar. 30, 2012) (holding that the reasoning of the pre-ADAAA obesity cases "remains applicable even after the passage of the ADAAA" and there is no ADA claim when the employer does not regard the claimant "as suffering a physiological weight-related disorder").[3]

Notwithstanding the entrenched majority rule, a few courts have relied on an internal EEOC document, the EEOC Compliance Manual, section 902.2(c)(5)(ii), to hold that "severe

---

[3] There also are pre-ADAAA cases resolving obesity-based discrimination claims on the issue of whether the obesity substantially limited the plaintiff, or was perceived to. Those cases would be affected by the ADAAA's revision of the substantial limitation aspect of "disability."

8

obesity"—defined as body weight more than 100% over the norm—is an impairment even in the absence of an underlying physiological disorder.[4] The court in *Morriss* correctly rejected that approach as contradicting the express language of the ADA and EEOC's own regulations and interpretive guidance. *See Morriss*, 817 F.3d at 1112; *see also Watkins*, 463 F.3d at 441-42 (rejecting EEOC Compliance Manual standard). But BNSF notes that even if that standard applied, Shell's obesity still would not be an impairment because at the time of the decision his weight was not more than 100% over the norm, which would have required that he weigh over 402.6 pounds.[5]

Given the overwhelming caselaw requiring an underlying physiological disorder for obesity to qualify as an impairment, to prove his regarded-as ADA claim Shell must show that his obesity either is a symptom of an underlying physiological disorder affecting a body system or that BNSF perceived that it was. He has no evidence sufficient to make that showing.

> **B.    BNSF did not regard Shell as disabled because there is no evidence that Shell's obesity is an actual impairment, that BNSF acted on the basis of any alleged actual impairment, or that BNSF perceived Shell as having an impairment.**

Shell does not claim to have any actual impairment—that is, a physiological disorder underlying his obesity. He testified that no doctor has ever told him that he has an underlying

---

[4] *See, e.g., EEOC v. Resources of Human Dev., Inc.,* 827 F.Supp.2d 688, 694 (E.D. La. 2011); *Whittaker v. America's Car-Mart, Inc.*, 2014 WL 1648816 at *2 (E.D. Mo. 2014); *see also BNSF Ry. Co. v. Feit*, 365 Mont. 359, 281 P.3d 225, 231 (Mont. 2012) (interpreting Montana law).

[5] Shell's medical history questionnaire reveals that he was 56 years old on November 9, 2010, at the time of the challenged decision. *See* SOF ¶ 18. The National Health and Nutrition Examination Survey (NHANES) data are the primary source of body measurement information for the U.S. population and show the norm or mean (average) weight broken down by gender, ethnicity, and age. *See Anthropometric Reference Data for Children and Adults: United States 2007-2010* (available at https://www.cdc.gov/nchs/data/series/sr_11/sr11_252.pdf). The data show that the mean weight for Shell's age group was 91.3 kg or 201.3 lbs. *See id.,* Table 6. To be more than 100% over the norm, Shell would therefore need to weigh over 402.6 pounds. Shell weighed 331 pounds at that time. SOF ¶ 19.

9

medical condition causing his weight to be what it is. SOF ¶ 27. Moreover, Shell did not disclose that he had any health conditions associated with Class III obesity or any other underlying medical conditions on the medical questionnaire form he submitted to BNSF in connection with his application for employment—he described his overall health as "very good" and denied that he had any problems with work or other daily activities as a result of his physical health. SOF ¶ 18. Further, BNSF's decisionmaker, Dr. Jarrard, testified that he was unaware that Shell had any of the medical conditions associated with Class III obesity or that Shell had any underlying physiological disorder of which his obesity was a symptom SOF ¶ 24.[6]

For the same reason, Shell cannot demonstrate regarded-as coverage by showing a perceived impairment. It is undisputed that, at the time of its decision to revoke its job offer to Shell, BNSF did not perceive Shell's obesity as satisfying the definition of "impairment" by being the result of an underlying physiological disorder affecting one or more of his body systems. SOF ¶ 24. Instead, Dr. Jarrard's decision was based solely on the prospective risks of developing certain medical conditions—sleep apnea, diabetes, heart disease—associated with Class III obesity and the high risk of sudden incapacitation that could result from any of those conditions. SOF ¶ 25.

Nor can Shell contend that acting on that basis constitutes regarding him as disabled. To prevail Shell must show that BNSF perceived him as having a *present* ADA-defined physical impairment. 42 U.S.C. § 12102(3)(A); *see Silk,* 795 F. 3d at 706-07 (requiring plaintiff to

---

[6] BNSF notes that given that undisputed fact even if there were some unknown-to-BNSF disorder, Shell still could not demonstrate regarded-as coverage because to do so he must show that BNSF acted on the basis of an actual or perceived impairment, 42 U.S.C. §12102(3)(A); *Morriss,* 817 F. 3d at 1113, which could not occur absent knowledge of the disorder.

10

demonstrate that the decisionmaker believed he had an ADA-defined impairment to satisfy to show regarded-as disability); *Morriss*, 817 F.3d at 1113 ("the plain language of the ADA prohibits actions based on an existing impairment or the perception of an existing impairment"); *Watkins*, 463 F.2d at 440-41 (to be perceived as having an impairment under the ADA a plaintiff must show that the employer perceived him or her as meeting the ADA definition of "impairment").[7]

In *Morriss*, the Eighth Circuit upheld summary judgment on the plaintiff's "regarded as" disability claim where he failed to produce evidence that BNSF acted on a belief of a *presently existing* physical impairment and expressly rejected the notion that a concern about developing a condition in the future is satisfies the regarded-as standard:

> The ADA prohibits an employer from discriminating on the basis of a presently-existing "physical impairment" as that term is defined under the Act…but the ADA does not prohibit an employer from discriminating on some other basis, i.e. on its assessment that although no physical impairment currently exists, there is an unacceptable risk of a future physical impairment…In other words, as a threshold matter, Morriss was required to show that BNSF perceived his obesity to be a condition that met the definition of "physical impairment." The ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment as defined under the Act.

*Morriss*, 817 F.3d at 1113. Because the evidence failed to show that BNSF perceived the plaintiff's obesity to be an existing physical impairment and instead demonstrated that he was denied

---

[7] The statute's use of present tense reveals that a perception must be of a *presently* existing impairment not a perception of a *future* impairment. 42 U.S.C. § 12102(1)(C) ("being regarded as *having* such an impairment) (emphasis added); § 12102(3)(A) ("individual meets the requirement…if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of *an actual or perceived physical or mental impairment* whether or not *the impairment limits or is perceived to limit* a major life activity") (emphasis added); *accord*, 29 C.F.R. § 1630.2(g)(1)(iii) & (l)(1).

11

employment only because BNSF believed he would or could develop health risks in *the future* by having a BMI of 40, summary judgment on his claim of "regarded as" disability was proper. *Id.*

Indeed, EEOC in its interpretive guidance definitively confirmed that reading by stating that the definition of impairment "does not include characteristic predisposition to illness or disease." 29 C.F.R. § 1630.2(h) App. Because an actual predisposition to illness or disease is not an impairment, a belief that an individual may or even will develop an illness or disease is not a perception of an impairment under the ADA. Again, "the ADA does not prohibit an employer from acting…in its assessment that although no impairment currently exists, there is an unacceptable risk of future impairment." *Morriss*, 817 F.3d at 1113. Accordingly, BNSF's actions did not constitute perceiving Shell as having an impairment.

In sum, Shell's obesity was not an actual impairment in that there is no evidence it is the result of a physiological disorder. Likewise, BNSF did not perceive Shell's obesity as the symptom of a physiological condition or as affecting any of his body systems. Accordingly, BNSF did not regard Shell as disabled and his ADA claims cannot proceed.

## II. SHELL ALSO CANNOT ESTABLISH DISABILITY DISCRIMINATION BECAUSE BNSF ACTED ON A QUALIFICATION STANDARD THAT WAS JOB-RELATED AND CONSISTENT WITH BUSINESS NECESSITY

Even if Shell could demonstrate that he was "disabled" for purposes of the ADA, his disability-discrimination claims still must be dismissed because BNSF acted on the basis of a practice that is job-related and consistent with business necessity, which provides a defense under the ADA. 42 U.S.C. § 12113(a).[8] Specifically, BNSF's decision was based on a practice by

---

[8] BNSF may defend its practice under the business-necessity standard regardless of whether it could also satisfy the separate "direct threat" standard. *See, e.g., EEOC v. Exxon Corp.*, 203 F.3d 871, 875 (5th Cir. 2000). When an "employer has developed a standard applicable to all

which it declines on a temporary basis to hire new applicants for safety-sensitive positions if their BMI equals or exceeds 40 because of the significant safety risks presented by such individuals working in the specialized and unforgiving railroad work environment. SOF ¶ 13.

To defend on the basis of a job-related-and-consistent-with-business-necessity standard, an employer must demonstrate that the standard strongly supports a legitimate employer goal, such as safety. *See, e.g. Bates v. United Parcel Svc., Inc.*, 511 F.3d 974, 996 (9th Cir. 2007); *see also Coffman v. Indianapolis Fire Dep't,* 578 F.3d 559, 565 (7th Cir. 2009) ("[plaintiff's] well-being was essential not only to her safety but to the public at large; thus, Department had a particularly compelling interest in assuring that she was both physically and mentally fit to perform her duties"); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (noting that safety is a business necessity); *Conroy v. New York State Dept. of Correctional Servs.*, 333 F. 3d 88, 97 (2d Cir. 2003) ("business necessity includes ensuring that the workplace is safe and secure"); *Pamon v. Bd. of Trustees of Univ. of Illinois,* 2011 WL 3584334, at *1 (N.D. Il. Aug. 8, 2011) (safety of employee and public were business necessities).

BNSF's BMI standard easily satisfies the business-necessity test. It is undisputed that the Intermodal Equipment Operator position for which Shell applied is a safety-sensitive position. SOF ¶ 5. BNSF applies a qualification standard—that employees not have a BMI in excess of

---

employees of a given class," the employer may defend the standard as a business necessity rather than under the direct-threat standard, which focuses on individual circumstances. *Id.* The business-necessity standard "addresses whether the standard can be justified as an across-the-board requirement." *Id.*; *see also Bates v. United Parcel Serv., Inc.,* 511 F.3d 974, 993 (9th Cir. 2007) (noting that defendant was "not required to meet the requirements of the direct threat defense" in assessing qualification standard). Alternatively, the same evidence supporting BNSF's reliance on the business-necessity defense supports the direct-threat standard with respect to Shell and defeats his claim for that reason. *See* 29 C.F.R. § 1630.2(r).

40—to all applicants applying for safety-sensitive positions. *Id.* ¶ 13. BNSF takes that approach because there are significant safety risks associated with individuals who have a BMI of 40 or greater working in a safety-sensitive job in the specialized railroad work environment. *Id.* ¶ 13.[9] In particular, those with a BMI of 40 or greater are at a substantially higher risk of developing a number of medical conditions, including heart disease, diabetes, and sleep apnea, that frequently manifest as sudden incapacitation or serious impairment of alertness or cognitive ability. *Id.* ¶ 14.

The risk of such conditions manifesting during the performance of railroad safety-sensitive job duties poses significant safety issues including risks of substantial harm to the individual, coworkers, and the general public because of the unforgiving nature of the railroad working environment and the presence of heavy, moving equipment and other individuals in the immediate vicinity. *Id* ¶ 15. Although any incapacitation presents a safety risk, sudden incapacitation presents significant risks of harm that could be catastrophic. For example, loss of consciousness or other incapacitation of an Intermodal Equipment Operator while that employee is either operating the equipment involved in the job or working around that equipment or other equipment in the yard could lead to serious injury or death of that employee, others working around that employee, or both, and may also present significant safety risks for members of the general public located in the area near the yard. *Id.* ¶ 16. The safety risks are particularly

---

[9] The Supreme Court and the Seventh Circuit have discussed the nature of the railroad working environment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 628 (1989) (certain positions involve the "discharge [of] duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences"; "can cause great human loss before any signs of impairment become noticeable to supervisors or others."); *Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Cent. Conference v. Union Pacific R. Co.*, 719 F.3d 801, 804 (7th Cir. 2013) (Railroad "employees who are not sufficiently healthy, alert, and fit for work can pose grave dangers to themselves and to many others.").

problematic because a person may not have one of the conditions identified above at a given time but may develop one or more of them at any time without the individual's prior knowledge. *Id.* ¶ 17. Further, the first presentation of those conditions in the Class III obesity population may be incapacitation. *Id*. That unexpected onset of the symptoms of one of the conditions generally is much more dangerous than an employee who has one of those conditions and is receiving appropriate treatment and maintaining control of the condition. *Id*. Given the magnitude of the risks it seeks to prevent, BNSF's obesity standard is job-related and consistent with business necessity. *See Bates*, 511 F.3d at 996; *Conroy*, 333 F. 3d at 97.[10]

In sum, BNSF's BMI approach is permitted under the ADA as job-related and consistent with business necessity and cannot form the basis for an unlawful discrimination claim. Accordingly, should the Court reach the issue it should grant summary judgment in favor of BNSF on the job-related-and-consistent-with-business-necessity defense.

## CONCLUSION

Shell's obesity-based discrimination claims are like those of many other plaintiffs before him that courts have rejected. Obesity is not an impairment unless it is a symptom of a physiological disorder. Three circuit courts and numerous district courts have reached that conclusion, and there is no reason to think the Seventh Circuit would rule differently. Applying that rule, there is no evidence that Shell's obesity resulted from a physiological disorder or that BNSF thought that it did. As such, there is no actual or perceived impairment and thus no disability under the ADA. Therefore, BNSF is entitled to summary judgment.

---

[10] Shell could not satisfy the standard through any reasonable accommodation. He either could meet the standard or not, and no change BNSF could make would cause his obesity to be different than it was. *See Allmond v. Akal Security, Inc.* 558 F.3d 1312, 1317-18 (11th Cir. 2009).

Dated: August 18, 2017.

>Respectfully submitted
>
>By: /s/ Bryan P. Neal
>Bryan P. Neal
>Stephen F. Fink (*pro hac vice*)
>THOMPSON & KNIGHT LLP
>One Arts Plaza
>1722 Routh Street, Suite 1500
>Dallas, Texas 75201
>Telephone: (214) 969-1700
>Fax: (214) 969-1751
>Email: Bryan.Neal@tklaw.com
>Email: Stephen.Fink@tklaw.com
>
>Heather R. Adams
>DALEY MOHAN GROBLE, P.C.
>55 West Monroe Street, Suite 1600
>Chicago, Illinois 60603-5001
>Telephone: 312-422-9999
>Fax: 312-422-5370
>Email: hadams@daleymohan.com
>
>ATTORNEYS FOR
>BNSF RAILWAY COMPANY

## CERTIFICATE OF SERVICE

I certify that on August 18, 2017, a copy of this document was electronically filed. Notice of this filing will be sent to all counsel of record by operation of the Court's Electronic Filing System.

>s/ Bryan P. Neal

031432 000589 19744042.10