**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD SHELL, | § | Case No. 1:15-CV-11040 |
| | § | |
| Plaintiff, | § | |
| | § | Judge Sharon Johnson Coleman |
| v. | § | |
| | § | Magistrate Judge Maria Valdez |
| BURLINGTON NORTHERN SANTA FE | § | |
| RAILWAY COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**BNSF RAILWAY COMPANY'S STATEMENT OF**
**UNDISPUTED MATERIAL FACTS**

In support of its Motion for Summary Judgment filed on this date, Defendant BNSF
Railway Company ("BNSF") (incorrectly named as Burlington Northern Santa Fe Railway
Company) submits its Local Rule 56.1(a)(3) Statement of Material Facts as to which there is no
genuine issue and which entitle BNSF to summary judgment as a matter of law. This Statement
of Undisputed Material Facts relies upon the following Exhibits:

**Ex. A**: Excerpts from Jan. 18, 2017 Deposition of Ronald Shell ("Shell Depo.")

**Ex. B**: Excerpts from Jan 25, 2017 Deposition of Dr. Michael Jarrard ("Jarrard Depo.")

**Ex. C**: Excerpts from Jan. 30, 2017 Deposition of Kim Cummings
("Cummings Depo.")

**Ex. D**: Excerpts from January 25, 2017 Deposition of Chris Kowalkowski ("Kowalkowski
Depo.")

**Ex. E**: Third Party Defendant's Responses to Plaintiff's Rule 31 Deposition by
Written Questions ("CHS Interrogatories")

**Ex. F**: August 15, 2017 Declaration of Dr. Michael R. Jarrard, M.D. ("Jarrard Decl.")

1

**Ex. G:** Defendant's Expert Disclosure

1.      Plaintiff Ronald Shell ("Shell") had been working as an employee of a company called Rail Terminal Services ("RTS") that had been handling operations at the Corwith Rail Yard in Chicago, Illinois. Compl. Dkt # 1, ¶¶ 13-15; Shell Depo. 45:1-16.

2.      Shell is a citizen and resident of the Northern District of Illinois. BNSF is a for-profit corporation registered with the Illinois Secretary of State. Compl. Dkt. #1, ¶¶ 4-5.

3.      In or around July 2010, BNSF informed all of RTS's employees that it would be taking over operations of the Corwith Yard from RTS in January 2011 and that they could apply to work for BNSF. Compl. Dkt. # 1, ¶ 17. Shell Depo. 45:5-46:4.

4.      On or about July 12, 2010, Shell completed an online employment application for employment with BNSF as an Intermodal Equipment Operator ("IEO"). Compl., Dkt # 1, ¶ 21; Shell Depo. 46:12-48:12, Ex. 2 thereto (July 9, 2010 email from BNSF regarding interview process), and Ex. 3 thereto (BNSF External Application for Employment completed by Shell).

5.      The IEO position is a safety-sensitive position that entails three different functions, all of which involve the employee moving up and down and around moving equipment and a need to be alert and attentive at all times. Jarrard Depo. 27:17-28:14; Cummings Depo. 25:11-25 and Ex. 2 thereto (Job Posting and description for IEO position).

6.      The three functions included in the IEO position are groundsman, hostler, and crane operator. Generally, a groundsman walks or drive vehicles along the train and gets up and down rail cars to insert and remove interlocker devices; a hostler operates trucks and repositions truck chassis and boxes throughout the rail yard; and a crane operator operates an overhead crane that moves intermodal boxes to and from train cars and on and off truck chassis parked in the

train yard. Jarrard Depo. 57:12-58:4; Cummings Depo. 25:11-25 and Ex. 2 thereto (Job posting and description for IEO position).

7.      Although Shell previously had been working at the Corwith Yard for RTS, BNSF changed the nature of the jobs by requiring that employees holding IEO positions be able to perform all three of the functions comprising the IEO position. Jarrard Depo. 28:2-14; 57:12-58:4; Kowalkowski Depo. 37:16-20; Cummings Depo. 25:11-25 and Ex. 2 thereto (Job posting and description for IEO position).

8.      On August 2, 2010, following an interview process, BNSF made Shell an offer of employment as an IEO with a scheduled start date of January 1, 2011, conditioned upon Shell's successful completion of a background check, drug test, physical examination, and BNSF's medical-evaluation process. Compl. Dkt # 1, ¶ 24; Shell Depo. 50:8-52:2 and Ex. 4 thereto (contingent offer of employment).

9.      Comprehensive Health Services, ("CHS"), a BNSF contractor, coordinates BNSF's post-offer, pre-employment medical-evaluation process, including by facilitating certain post-offer medical examinations and other assessments. As part of that process applicants who have received a conditional offer of employment are asked to complete a BNSF Medical Questionnaire. Kowalkowski Depo. 44:-4-22; CHS Interrogatories at Interrogatory No. 7; Jarrard Decl. ¶ 4.

10.     CHS will talk to the candidate if needed, coordinate with them to obtain additional medical information or assessments that may be necessary, and will transmit information to BNSF's Medical and Environmental Health ("MEH") Department for a determination on the

medical qualification of some post-offer candidates. CHS Interrogatories, Interrogatory No. 7; Jarrard Decl. ¶ 5.

11.     The MEH Department is responsible for medical-qualification evaluations and decisions for new hires. Jarrard Depo. 20:4-13; 78:10-79:8; Jarrard Decl. ¶ 2.

12.     As part of its medical-evaluation process, BNSF reviews the candidate's BMI for safety-sensitive positions, such as IEO. Jarrard Depo. 114:1-11-11; Jarrard Decl. ¶ 8.

13.     BNSF declines on a temporary basis to hire applicants for safety-sensitive positions who have a BMI of 40 or greater (commonly labeled as Class III obesity) because of the significant risks associated with individuals who have a BMI of 40 or greater working in a safety-sensitive job in the specialized railroad work environment. Jarrard Depo. 40:14-21; Jarrard Decl. ¶¶ 8-9; Kowalkowski Depo. 70:19-71:14.

14.     In particular, those with a BMI of 40 or greater are at a substantially higher risk of developing a number of medical conditions, including sleep apnea, diabetes and heart disease, that frequently manifest as a sudden incapacitation or serious impairment of alertness or cognitive ability. Jarrard Depo. 39:8-40:21; 63:5-8; 146:12-148:22; Jarrard Decl. ¶ 9; *see also* Defendant's Expert Disclosure.

15.     The possibility of such conditions manifesting during the performance of railroad safety-sensitive job duties poses significant safety issues including risks of substantial harm to the individual, coworkers, and the general public. That is so because of the unforgiving nature of the railroad working environment and the presence of heavy, moving equipment and other individuals in the immediate vicinity. Jarrard Depo. 68:14-25; 146:12-148:22; Jarrard Decl. ¶ 9.

16.     Although any incapacitation presents a safety risk, sudden incapacitation presents significant risks of harm that could be catastrophic. For example, loss of consciousness or other incapacitation of an IEO while that employee is either operating the equipment involved in the job or working around that equipment or other equipment in the yard could lead to serious injury or death of that employee, others working around that employee, or both, and may also present significant safety risks for members of the general public located in the area or near the yard. Jarrard Depo. 68:14-25; 146:12-148:22; Jarrard Decl. ¶ 9.

17.     The safety risks are particularly problematic because a person may not have one of these conditions at a given time but may develop one or more of them at any time without the individual's prior knowledge. Further, the first presentation of those conditions in the Class III obesity population can be incapacitation. That unexpected onset of symptoms of one of the conditions is generally much more dangerous than an employee who has one of the conditions and is receiving appropriate treatment and maintaining control of the condition. Jarrard Depo. 70:8-72:4; 146:12-148:22; Jarrard Decl. ¶ 10.

18.     After receiving a conditional offer of employment from BNSF, Shell filled out and submitted a medical history questionnaire. On the questionnaire form, Shell did not disclose any health conditions associated with Class III obesity or other underlying medical conditions, described his overall health as "very good," and reported no problems with work or other daily activities as a result of his physical health. Compl., Dkt. # 1, ¶ 30; Shell Depo. 56:13-16 and Ex. 6 thereto (BNSF Medical Questionnaire submitted by Shell); Jarrard Decl. ¶ 4 and Ex. 1 thereto (BNSF Medical Questionnaire submitted by Shell).

19.     CHS also coordinated a physical examination of Shell, which revealed that Shell's height was 5' 10" and his weight was 331 pounds, making his Body Mass Index ("BMI") 47.5. Jarrard Depo. 45:4-13; Jarrard Decl. ¶¶ 6, 13 and Ex. 2 thereto (documents reviewed by Dr. Jarrard in connection with Shell's application) at Shell/BNSF 000061.

20.     CHS forwarded the results of Shell's physical examination to Dr. Michael Jarrard, an occupational medicine doctor serving as BNSF's chief medical officer and head of BNSF's MEH Department. Jarrard Depo. 20:4-13; Jarrard Decl. ¶¶ 5-6, 14 and Ex. 2 thereto (documents reviewed by Dr. Jarrard in connection with Shell's application).

21.     Dr. Jarrard reviewed the information and determined that Shell was not currently medically qualified for the safety-sensitive position due to the significant health and safety risks associated with his BMI. Jarrard Depo. 58:21-59:2; 68:14-25; 78:20-80:6 and Ex. 2 thereto (BNSF Applicant Clinical Notes for Shell) at Shell/BNSF 000020; Jarrard Decl. ¶¶ 7, 13 and Ex. 3 thereto (November 9, 2010 email from Dr. Jarrard).

22.     Per Dr. Jarrard's instruction, CHS advised Shell that the BNSF Medical Review Officer had determined that "he was not currently medically qualified for the safety sensitive position of Intermodal Equipment Operator due to significant health and safety risks associated with [his] Class III obesity (Body Mass Index above 40)." Shell Depo. 59: 20-61:17 and Ex. 7 thereto (November 9, 2010 correspondence from BNSF); Jarrard Decl. ¶ 7 and Ex. 3 thereto (November 9, 2010 email from Dr. Jarrard).

23.     Shell understood upon receipt of that correspondence that BNSF was withdrawing its offer of employment to him. Shell Depo. 59:20-61:17 and Ex. 7 thereto (November 9, 2010 correspondence from BNSF).

24.     Dr. Jarrard's decision was based only on Shell's BMI and the risks associated with that BMI, not any perception of any existing physiological disorder or concern regarding any functional limitation. Jarrard Depo. 24:13-19; 58:21-59:2; 146:12-148:22; Jarrard Decl. ¶¶ 13-14.

25.     In particular, as explained above, Dr. Jarrard determined that the high risk of developing diabetes, heart disease, and sleep apnea associated with Class III obesity presented an extremely high risk of sudden death or incapacitation which could endanger the safety of Shell, his coworkers, and the public in the IEO position. Jarrard Depo. 68:14-25; 146:12-22; Jarrard Decl. ¶¶ 9-10, 14.

26.     When Dr. Jarrard made his decision not to approve Shell for hire, he was not aware whether Shell had any of those three medical conditions. Nor was he aware of any information indicating that Shell's obesity was the symptom of any underlying medical condition. Jarrard Depo. 60:20-25; 106:5-24; 115:1-17; 123:18-124:8; 128:22-130:15; 146:12-147:23; Jarrard Decl. ¶ 14.

27.     None of Shell's doctors has ever told him that he has an underlying medical condition causing his weight to be what it is. Shell Depo. 81:6-9.

28.     On or about December 20, 2010, Shell filed a Charge of Discrimination with the Illinois Department of Human Rights in connection with BNSF's decision not to hire him. The Charge was cross-filed with the EEOC. Compl. Dkt # 1 ¶ 6; Shell Depo. 65:15-66:3 and Ex. 8 thereto (Charge of Discrimination).

29.     The EEOC issued Shell a notice of right to sue on or about September 10, 2015. Compl., Dkt. # 1, ¶ 8; Shell Depo. 70:17-71:5 and Ex. 10 thereto (Notice of Right to Sue).

30.     Shell filed this lawsuit on December 8, 2015. Compl., Dkt # 1.

31.     Shell does not assert that his obesity rendered him actually disabled but instead only claims that BNSF regarded him as disabled on the basis of his Class III obesity. Compl., Dkt # 1, ¶¶ 36, 47, 49; Shell Depo. 78:23-79:12.

Dated: August 18, 2017.

Respectfully submitted

By: /s/ Bryan P. Neal

Bryan P. Neal
Stephen F. Fink (*pro hac vice*)
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Fax: (214) 969-1751
Email: Bryan.Neal@tklaw.com
Email: Stephen.Fink@tklaw.com

Heather R. Adams
DALEY MOHAN GROBLE, P.C.
55 West Monroe Street, Suite 1600
Chicago, Illinois 60603-5001
Telephone: 312-422-9999
Fax: 312-422-5370
Email: hadams@daleymohan.com

ATTORNEYS FOR DEFENDANT
BNSF RAILWAY COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, a copy of the foregoing document was electronically filed. Notice of this filing will be sent to all opposing counsel of record by operation of the Court's Electronic Filing System.

s/ Bryan P. Neal

Bryan P. Neal

031432 000589 19744424.5