**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RONALD SHELL,                              )
                                           )
                    Plaintiff,             )    Case No. 15-cv-11040
                                           )
          v.                               )    Judge Sharon Johnson Coleman
                                           )
BURLINGTON NORTHERN SANTA FE               )
RAILWAY COMPANY,                           )
                                           )
                    Defendant.             )

## MEMORANDUM OPINION AND ORDER

The plaintiff, Ronald Shell, brought this case against the Burlington Northern Santa Fe

Railway Company ("BNSF") based on allegations that BNSF failed to hire him as a result of a

disability. Following briefing and oral argument, this Court denied BNSF's motion for summary

judgment, holding that disputes of material fact remained as to whether BNSF had regarded Shell as

disabled and whether the business-necessity defense applied. BNSF now moves this Court to

reconsider its prior order or, alternatively, to certify this matter for interlocutory appeal. For the

reasons set forth herein, BNSF's motion for reconsideration [109] is denied and BNSF's motion for

interlocutory appeal [111] is granted.

**Legal Standard**

Under Federal Rule of Civil Procedure 54(b), a district court has inherent authority to

reconsider its own orders entered prior to final judgment. *See Saunders v. City of Chi.*, No. 12-CV-

09158, 2015 WL 7251938, at *2-3 (N.D. Ill. Nov. 17, 2015) (Dow, J.). "Motions for reconsideration

serve a limited function: to correct manifest errors of law or fact or to present newly discovered

evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)

(Zagel, J.) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.

1996)).

**Discussion**

BNSF first contends that this Court erred by ruling on a theory that Shell did not disclose or litigate. Shell's response to BNSF's motion for summary judgment primarily argued that BNSF treated Shell's weight as an impairment in violation of the ADA. This Court, relying on abundant caselaw, held that Shell had failed to adduce evidence necessary to support such a claim. But Shell, in a later paragraph of his response, wrote that:

> In the alternative, if this Court chooses to side with the Eighth Circuit in that obesity can only be defined as a disability under the ADA when caused by an underlying physiological condition, but because of the possible risks associated with possible sleep apnea, diabetes and heart conditions, a 2014 Seventh Circuit decision case may prove enlightening. In *Tate v. Ancell*, 551 F. Appx. 877 (7th Cir. 2014) the Seventh Circuit held that sleep apnea could be deemed a disability and substantially limit a major life activity. *Id.* at 884, but that Tate did not present enough evidence to find that sleep apnea affected a Tate major life activity. *Id.* at 885. In *Fedlman v. Olin Corp.*, 692 F.3d 748, 754 (7th Cir. 2012), the Seventh Circuit found that the Feldman's evidence created a genuine dispute of material fact that sleep apnea was a disability under the ADA and denied the defendant's summary judgment motion. However, the Court does not need to determine if the sleep apnea affects a major life function, but rather deem that Mr. Shell was "regarded as" disabled.

This argument may not have been elegant or well-constructed, but its gist was clear. Given Shell's lack of clarity and BNSF's failure to address this argument in reply, however, this Court, in an abundance of caution, scheduled oral arguments and expressly directed BNSF to be prepared to address Shell's "regarded as" claims with respect to the underlying conditions that BNSF was concerned that Shell would develop. Thus, this theory was disclosed and litigated by the parties.

BNSF, in a series of conclusory sentences, asserts that this claim "contradicts Shell's discovery responses" and that Shell "identified only obesity as the relevant disability in his complaint and EEOC charge." BNSF, however, failed to raise these arguments in its reply brief or at oral arguments, and therefore waived them. *See Baker v. Lingren*, 856 F.3d 498, 503 (7th Cir. 2017) (affirming that arguments raised for the first time in a motion to reconsider are waived); *Stache v. Int'l*

*Union of Bricklayers and Allied Craftsmen, AFL-CIO*, 852 F.2d 1231, 1233 (9th Cir. 1988) (recognizing

that a defendant may waive a plaintiff's failure to file an EEOC complaint); *cf. Salas v. Wisconsin Dept.*

*of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007) ("Filing a timely charge with the EEOC is not a

jurisdictional prerequisite to suit in federal court; rather, it is an affirmative defense akin to

administrative exhaustion."). Accordingly, this Court rejects the defendant's assertion that Shell

failed to raise his "regarded as" disability argument.

BNSF argues that this Court erred in its interpretation of *EEOC v. Amsted Rail Co.*, 280 F.

Supp. 3d 1141 (S.D. Ill. 2017), which was decided after briefing in this case concluded but before the

Court held oral arguments. BNSF attempts to distinguish *Amsted* by noting that Ingram, one of the

plaintiffs in that case, had previously suffered from carpal tunnel syndrome, whereas Shell had not

previously been diagnosed with any of the prospective impairments at issue. The Amsted court,

however, was clear that the employer in that case was motivated not by Ingram's past carpal tunnel

diagnosis but rather by the risk that Ingram, who's carpal tunnel syndrome had been cured, would

develop that condition again in the future.

BNSF's attempt to distinguish Judge Wood's dissent in *EEOC v. Rockwell Int'l Corp*, 243 F.3d

1012, 1019 (7th Cir. 2001) is also unavailing. Although BNSF argues that its refusal to hire Shell

based on the likelihood that he would develop a disability was based on medical science, that

decision appears to have been precisely what Judge Wood contemplated when she warned that "it is

not at all clear to me that as a matter of law the ADA permits an employer to refuse to hire a person

who is fully qualified to perform certain work, simply because that individual might at some

unspecified time in the future develop a physical or other disability that would render her unable at

that later date to meet the employer's reasonable expectations." *EEOC v. Schneider Nat'l, Inc.*, 481

F.3d 507 (7th Cir. 2007), which BNSF relies on as contrary authority, is inapposite, because the

medical condition at issue in that case did not satisfy the definition of a disability under the ADA.

BNSF's next contends that it did not treat Shell as if he suffered from conditions other than obesity. Although BNSF's statements of fact establish that it did not perceive Shell to have any existing physiological disorder. those statements are irrelevant because, as this Court explained in its opinion, BNSF was "regarding" Shell as if he had those disorders even though all parties agreed that he presently did not. BNSF has offered additional evidence from Dr. Jarrad, in the form of a supplemental declaration, making clear that the company does directly hire individuals with the disabilities at issue (so long as they comply with a treatment plan). Although this fact would be potentially relevant for a jury to consider, BNSF's general hiring practices do not alter the potentially discriminatory nature of its actions with respect to Shell. BNSF admits that its actions were based on the potential that Shell would suddenly develop one of the conditions at issue. The Court fails to see a substantial difference between acting based on the perceived risk of a disability suddenly developing and acting based on the perceived risk of the disability once it has already manifested.

Finally, BNSF attempts to support its argument for reconsideration of the regarded-as disabled issue by renewing its arguments regarding *Morris v. BNSF*, 817 F.3d 1104 (8th Cir. 2016) and the applicable EEOC guidance. The Court appreciates BNSF's clear and concise arguments, but remains convinced that *Morris* is not controlling here. Accordingly, the Court concludes that BNSF has not demonstrated that the Court committed a manifest error of law or fact in concluding that a genuine dispute of material fact exists as to whether Shell has a viable ADA claim.

BNSF separately contends that this Court manifestly erred in its determination of whether the business-necessity defense should apply. The Court agrees in part. There are two relevant defenses an employer may exercise under the ADA. One, the direct threat provision, focuses on an individual employee and the specific risk posed by that individual's disability. *E.E.O.C. v. Exxon Corp.*, 203 F.3d 871, 875 (5th Cir. 2000). The other, the business necessity defense, focuses on

whether a universal qualification standard can be justified as an across-the-board requirement in light of the magnitude of the possible harm and the probability of its occurrence. *Id.*

BNSF, relying on this Court's use of Shell's name in its analysis, argues that this Court mistakenly applied the direct threat defense rather than the business necessity defense. These frameworks are recognized to have parallel elements, and the Court agrees that its discussion of Shell's personal circumstances was more suggestive of review under the direct threat framework than the business necessity framework.

It is the employer's burden to establish the applicability of the business necessity defense by showing that a universal qualification standard is job-related and consistent with business necessity. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 993 (9th Cir. 2007). When analyzing safety-based qualification standards, courts consider the magnitude of the potential harm and the likelihood of the potential harm. *E.E.O.C. v. Exxon Corp.*, 203 F.3d 871, 875 (5th Cir. 2000). As the Fifth Circuit has noted, "The acceptable probability of an incident will vary with the potential hazard posed by the particular position; a probability that might be tolerable in an ordinary job might be intolerable for a position involving atomic reactors, for example." *Id.*

In rejecting the application of the business necessity defense, this Court held that BNSF had not identified any evidence establishing the probability that Shell would develop one of the disabilities at issue as a result of his class III obesity. BNSF asserts that evidence of statistical likelihood is unnecessary in this case. The majority of the cases that BNSF relies on, however, concern uncontrolled diabetes, a condition for which there is a legal presumption of likelihood of harm. *See Atkins v.* Salazar, 677 F.3d 667, 683 (5th Cir. 2011); Darnell *v. Thermafiber, Inc.*, 417 F.3d 657, 662 (7th Cir. 2005). The remaining case that BNSF relies on, *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1317 (11th Cir. 2009), imported its definition of "business necessity" wholesale from the Title VII context and appears to have given only passing consideration to the likelihood that any harm

would result from the disability at issue. BNSF has thus failed to affirmatively establish what evidentiary showing of risk is required.

The only evidence presented by BNSF is that those with Class III obesity are at a "substantially higher" risk of developing certain medical conditions that "frequently manifest" as sudden incapacitation or impairment. No information has been provided as to how often "frequently is" or what constitutes a "substantially higher" risk. Without any information to establish a baseline of comparison, these terms are too indefinite to support a finding of business necessity. Accordingly, BNSF has failed to establish that this Court should reconsider its prior refusal to grant summary judgment based on the business necessity defense.

The Court therefore turns to BNSF's motion for interlocutory appeal. Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if the order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal would materially advance the ultimate termination of the litigation.

Here, there is a controlling question of law: whether the ADA's regarded-as provision encompasses conduct motivated by the likelihood that an employee will develop a future disability within the scope of the ADA. This is a purely legal question concerning the reach of the ADA's regarded-as provision, and its resolution will be potentially dispositive of this case.

There is also substantial ground for a difference of opinion on this question, as demonstrated by this Court's opinion, the similar opinion issued by the Southern District of Illinois in *Amsted*, and the Eighth Circuit's purportedly conflicting opinion in *Morris*. Finally, an immediate appeal may advance the ultimate termination of this litigation, either by ending this litigation at summary judgment or by providing resolution to a contested question that is certain to complicate any potential trial in this case. The Court accordingly believes that an interlocutory appeal is warranted in this case and would constitute the best available use of judicial resources.

**Conclusion**

For the foregoing reasons, BNSF's motion for reconsideration [109] is denied. BNSF's motion to certify this case for interlocutory appeal [111] is granted. In the event that the Seventh Circuit accepts the appeal, all proceedings in this case will be stayed pending its resolution.

Date: 11/20/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge